# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

| | |
|---|---|
| Antionette Smith, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| The Coca-Cola Company, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1. The Coca-Cola Company ("Defendant") manufactures, packages, labels, markets, and sells dragon fruit flavored soda purporting to have "100% Natural Flavors" under the Fanta brand ("Product").




2.     However, the representations are false, deceptive, and misleading because the Product contains DL-Malic Acid, an artificial ingredient which imparts the flavor of dragon fruit.

## I.   CONSUMER DEMAND FOR NATURAL FLAVORS

3.     Consumers are increasingly concerned about the ingredients they eat and drink.

4.     Surveys have shown that consumers are less likely to buy beverages, even sodas, which have artificial ingredients.

5.     Within the spectrum of artificial ingredients, consumers are especially focused on, and seek to avoid, artificial flavors, and seek products with only natural flavors.

6.     The representation that the Product has "100% Natural Flavors" appeals to the more than seven out of ten consumers who avoid artificial flavors, as these synthetic ingredients are believed to be associated with detrimental health and environmental effects.[1]

7.     Natural flavor refers to the "essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents" from fruits or vegetables, "whose significant function in food is flavoring rather than nutritional." 21 C.F.R § 101.22(a)(3).

8.     Artificial flavor is "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 C.F.R § 101.22(a)(1).

9.     According to the Wall Street Journal, "As consumer concern rises over artificial

---

[1] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018; Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.

2

ingredients, more food companies are reconstructing recipes" to remove artificial flavors.[2]

10. According to Paul Manning, chief executive officer and president of Sensient Technologies, "Consumer desire for naturally flavored products is an emerging trend."[3]

11. Explanations for why consumers prefer foods containing natural, instead of artificial flavors, are varied.

12. A recent survey reported that over 82% of US respondents believe that foods with artificial flavors are less healthy than those promoted as containing natural flavors and/or not containing artificial flavors.

13. Consumers seek to avoid artificial flavors because they are weary of ingredients which are highly processed with chemical additives and synthetic solvents in laboratories.

14. According to Nielsen, the absence of artificial flavors is very important for over 40% of respondents to their Global Health & Wellness Survey.

15. One scholar theorized "the preference for natural products appeals to a moral ideology and offers a moral satisfaction."[4]

16. The trade journal, Perfumer & Flavorist, described "The Future of Artificial Flavors & Ingredients" as bleak, given consumer opposition to these synthetic ingredients.[5]

17. Mintel announced that consumer avoidance of artificial flavors is just as strong as

---

[2] Lauren Manning, How Big Food Is Using Natural Flavors to Win Consumer Favor, Wall Street Journal.
[3] Keith Nunes, Using natural ingredients to create authentic, fresh flavors, Food Business News, Sept. 20, 2018.
[4] Rozin, P., Spranca, M., Krieger, Z., Neuhaus, R., Surillo, D., Swerdlin, A., & Wood, K. (2004). Preference for natural: Instrumental and ideational/moral motivations, and the contrast between foods and medicines. Appetite, 43(2), 147–154. doi:10.1016/j.appet.2004.03.005.
[5] Jim Kavanaugh, The Future of Artificial Flavors & Ingredients, Perfumer & Flavorist, June 12, 2017.

3

their desire for natural flavors, in its Report, "Artificial: Public Enemy No. 1."[6]

18. About half of Americans say they seek out natural flavors at least some of the time.

19. In contrast, artificial flavors were sought out by only about one in 10 consumers, with approximately half saying they avoid them at least some of the time.

20. Nielsen reported that 62% of consumers try to avoid artificial flavors.

21. New Hope Network concluded that 71% of consumers avoid artificial flavors.

22. Label Insight determined that 76% of consumers avoid artificial flavors.

23. A recent survey shows more than three in four people worldwide are convinced that artificial flavors have no place in their ingredient lists.[7]

24. According to Forbes, 88% of consumers consider foods without artificial flavors to be more natural and healthier than foods with artificial flavors and would pay more for such foods.

## II. PRODUCT REPRESENTED AS ONLY CONTAINING NATURAL FLAVORS

25. Defendant represents the Product as having "100% Natural Flavors" and being "Naturally Flavored," with pictures of dragon fruit.




---

[6] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018; Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.

[7] What 'Natural' Really Means to Consumers GNT Group's Guide to Global Consumer Demands attests importance of natural colors for future-proof products, July 13, 2017.

26. Though the ingredients include "Natural Flavors," they also include "Malic Acid."



CARBONATED WATER, LESS THAN 2% OF: MALIC ACID, NATURAL FLAVORS, POTASSIUM CITRATE, POTASSIUM SORBATE, VEGETABLE EXTRACT (FOR COLOR), ASPARTAME, ACESULFAE POTASSIUM, SODIUM BENZOATE (TO PROTECT TASTE), CITRIC ACID.

27. The Product contains more malic acid than natural flavors, as the former is the second ingredient listed while the latter is the third, which reflects their order of predominance.

28. Unbeknownst to consumers, the ingredient list does not disclose that this malic acid is an artificial ingredient which imparts dragon fruit flavoring to the Product.

### III.  MALIC ACID

29. A flavor is a substance with a function to impart taste. See 21 C.F.R. § 101.22(a)(1) and (3).

30. Taste is a combination of sensations arising from specialized receptor cells in the mouth.[8]

31. Taste can be defined as sensations of sweet, sour, salty, bitter, and umami.

32. However, limiting taste to five categories suggests taste is simple, which is not true.

33. For example, the taste of sour includes the sourness of vinegar (acetic acid), sour milk (lactic acid), lemons (citric acid), apples (malic acid), and wines (tartaric acid).

34. Each of those acids is responsible for unique sensory characteristics of sourness.

---

[8] Gary Reineccius, Flavor Chemistry and Technology § 1.2 (2d ed. 2005).

35. Fruit flavors are the sum of the interaction between sugars, acids, and volatile compounds.[9]

36. Consumer acceptability of the flavor of dragon fruit is based on its perceived sweetness, sourness and tartness, determined by its sugar to acid ratio.

37. The sugars in fruits are mainly glucose and fructose, while the acids are mainly malic acid and citric acid.

38. The table below shows the acid composition of numerous fruits, and reveals that the predominant and primary acid in dragon fruit is malic acid.

| Fruit | First Predominant Acids | Second Predominant Acids |
| --- | --- | --- |
| Apple | Malic Acid (95%) | Tartaric Acid, Fumaric Acid |
| Apricot | Malic Acid (70%) | Citric Acid, Tartaric Acid |
| Blackberry | Citric Acid | Malic Acid |
| Blueberry | Citric Acid | Malic Acid, Quinic Acid |
| Cherry | Malic Acid (94%*) | Tartaric Acid |
| Cherry (Tropical) | Malic Acid (32%) | Citric Acid |
| Dragon fruit | Malic Acid | Citric Acid |
| Grape | Malic Acid (60%*) | Tartaric Acid |
| Grapefruit | Citric Acid | Malic Acid |
| Guava | Citric Acid | Malic Acid |
| Kiwi | Quinic Acid, Citric Acid | Malic Acid |
| Lime, Lemon | Citric Acid | Malic Acid |
| Mango | Citric Acid | Malic Acid, Tartaric Acid |
| Orange | Citric Acid | Malic Acid |
| Peach | Malic Acid (73%) | Citric Acid |
| Pear | Malic Acid (77%) | Citric Acid |
| Pineapple | Citric Acid | Malic Acid |
| Pomegranate | Malic Acid (>50%) | Citric Acid (>22%) |
| Raspberry | Citric Acid | Malic Acid, Tartaric Acid |
| Strawberry | Citric Acid | Malic Acid, Tartaric Acid |

---

[9] Y.H. Hui, et al., Handbook of Fruit and Vegetable Flavors, p. 693 (2010).

| Tamarind | Tartaric Acid | Citric Acid, Malic Acid |
| Watermelon | Malic Acid (99%) | Fumaric Acid |

39. Malic acid imparts the tart, sweet, fruit, and sour taste of dragon fruit.

## IV. CHEMICAL STRUCTURE OF MALIC ACID

40. Malic acid (molecular formula C4H6O5) is the common name for 1-hydroxy-1, 2-ethanedicarboxylic acid.

41. Malic acid has two isomers, or different arrangements of atoms in the molecule, L-malic acid, and D-malic acid. 21 C.F.R. § 184.1069.

42. An isomer is a molecule sharing the same atomic make-up as another but differing in structural arrangements.[10]

43. Stereoisomers differ by spatial arrangement, meaning different atomic particles and molecules are situated differently in any three-dimensional direction.

44. An enantiomer is a type of stereoisomer and like right and left-hand versions of the same molecular formula.

45. D-Malic Acid and L-Malic Acid are enantiomers with almost identical skeletal formulas.



---

[10] Dan Chong and Jonathan Mooney, Chirality and Stereoisomers (2019).

46. L-Malic Acid occurs naturally in dragon fruit and is known for providing the sour, sweet and tart taste this fruit is known for.

47. D-Malic Acid does not occur naturally.

48. D-Malic Acid is most commonly found as a racemic mixture of the D and L isomers, or DL-Malic Acid, commercially made from petroleum.

49. DL-malic acid is synthetically produced from petroleum in a high-pressure, high-temperature, catalytic process.

## V.  ADDITION OF DL-MALIC ACID

50. The taste of dragon fruit is the result of the combination of its natural sugars of glucose, fructose, and sucrose, combined with its most significant fruit acid, L-Malic Acid.

51. However, the Product adds artificial DL-Malic Acid to resemble dragon fruit's natural combination of sugars and L-Malic Acid.

52. This combination of DL-Malic Acid with sugars is not equivalent to the natural flavor of dragon fruit.

53. The addition of DL-Malic Acid imparts, creates, enhances, simulates, resembles and/or reinforces the sour, tart, sweet and fruity taste that dragon fruit is known for.

54. Defendant could have added L-Malic Acid from dragon fruit or even other fruits, a natural version citric acid, or natural dragon fruit flavor, but used artificial DL-Malic Acid because it cost less and/or more accurately resembled the taste of dragon fruit.

55. DL-Malic Acid is not a "natural flavor" as defined by federal and state regulations, because it is not from a fruit, vegetable or other natural source.

56. The natural flavor of dragon fruit is heavily dependent on specific ratios of sugar and L-Malic Acid, while the Product's flavors depend upon a ratio of sugar and DL-Malic Acid.

57. The only way to learn if a beverage adds natural or artificial malic acid is through laboratory analysis, which is not available or feasible for potential purchasers like Plaintiff to perform at the point-of-sale.

58. The results of analyzing the Product in accordance with accepted methodologies and standards revealed the presence of artificial DL-Malic Acid instead of natural L-Malic Acid.

## VI. REQUIREMENTS FOR LABELING

59. The Product's primary or "characterizing" flavor is Dragon Fruit because the label makes "direct [] representations" about this fruit through the words, "Dragon Fruit," pictures of a fresh whole and sliced dragon fruit, revealing its white flesh and seeds, and the pink and green background, which matches the colors of dragon fruit. 21 C.F.R. § 101.22(i).



60. Federal and identical state regulations require the Product to disclose the source of this dragon fruit flavor, i.e., from dragon fruit, natural sources other than dragon fruit, and/or artificial, synthetic sources, such as DL-Malic Acid from petroleum. 21 C.F.R. § 101.22(i).

61. By telling consumers the Product contains "100% Natural Flavors" and is "Naturally Flavored," Defendant misleads consumers by failing to disclose it contains DL-Malic Acid, which

9

functions to impart dragon fruit flavor.

 

62. Since the Product contains DL-Malic Acid that functions to impart the flavor of dragon fruit, "Dragon Fruit Soda" is required to "be accompanied by the word(s) 'artificial' or 'artificially flavored,'" such as "Artificial Dragon Fruit Flavored Soda" or "Artificially Flavored Dragon Fruit Soda." 21 C.F.R. § 101.22(i)(2).

## VII. DL-MALIC ACID IS USED TO IMPART FLAVOR

63. In certain uses, DL-Malic Acid could be a flavor enhancer or PH balancer.

64. A flavor enhancer is "added to supplement, enhance, or modify the original taste and or aroma of a food without imparting a characteristic taste or aroma of its own." 21 C.F.R. § 170.3(o)(11).

65. The addition of malic acid to vinegar (ascetic acid) dishes like barbecue pork, coleslaw, or pickled eggs would not fundamentally alter those underlying vinegar flavors.

66. However, because the flavor imparted by malic acid is the core component of dragon fruit, DL-Malic Acid imparts a flavor of its own and is not a flavor enhancer.

67. PH balancers are "substances added to change or maintain active acidity or basicity, including buffers, acids, alkalis, and neutralizing agents." 21 C.F.R. § 170.3(o)(23).

68. The added DL-Malic Acid is not a PH balancer because it is not necessary to change or maintain the Product's acidity or basicity, as carbonated beverages are highly acidic.

69. Irrespective of the purpose DL-Malic Acid was added, its effect is to provide the flavor of dragon fruit.

**VIII. CONCLUSION**

70. The Product contains other representations and omissions which are false and misleading.

71. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

72. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

73. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

74. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $2.29 for 20 oz, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## Jurisdiction and Venue

75. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

76. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

77. Plaintiff Antionette Smith is a citizen of Florida.

78. Defendant The Coca-Cola Company is a Delaware corporation with a principal place of business in Atlanta, Fulton County, Georgia.

79. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

80. The members of the classes Plaintiff seeks to represent are more than 100, because the Product is sold at thousands of grocery stores, dollar stores, drug stores, convenience stores, big box stores, and/or online, in these States.

81. Venue is in this District because a substantial part of the events or omissions giving rise to the claims occurred here, including Plaintiff's purchase and consumption of the Product, exposure to and reliance on the representations, and her awareness that they were misleading.

82. This action should be assigned to the Fort Lauderdale Division because Plaintiff resides in Broward County and a substantial part of the events or omissions giving rise to the claims occurred in Broward County, including Plaintiff's purchase, consumption, and/or use of the Product, and her awareness and/or experiences of and with the issues described here.

## Parties

83. Plaintiff Antionette Smith is a citizen of Lauderdale Lakes, Florida, Broward County.

84. Defendant The Coca-Cola Company is a Delaware corporation with a principal place of business in Atlanta, Georgia, Fulton County.

85. Fanta was first made in Europe during the Second World War by The Coca-Cola Company's European divisions.

86. The version of Fanta sold today is based on the Fanta that was re-introduced to Italy in the mid-1950s.

87. This soda was unique because it was made with local produce instead of only sugary

syrups.

88. Fanta has always been known as a more "natural" and fruit-centric brand of soda than American soda brands, due to its European origins.

89. In the United States, Fanta sodas are based on real fruit flavors, with bright colors from real fruit and natural ingredients.

90. Consumers trust the Fanta brand to be honest with them, because they have built up a reservoir of good will when it comes to fruit-flavored sodas.

91. Plaintiff viewed the label which said "100% Natural Flavors" and "Naturally Flavored," and expected only natural flavors were responsible for the dragon fruit taste.

92. Plaintiff is part of the over 70% of consumers who avoid artificial flavors.

93. Plaintiff is part of the over 82% of Americans who believe foods with artificial flavors are less healthy than those containing natural flavors without artificial flavors.

94. Plaintiff is part of the over 40% of consumers identified by Nielsen for whom the absence of artificial flavors is very important.

95. Plaintiff was unable to learn the malic acid listed in the ingredients was the artificial version or that it was used to provide the Product's dragon fruit taste.

96. Plaintiff relied on the words, terms coloring, descriptions, layout, packaging, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

97. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Dollar Tree, 5920 W Oakland Park Blvd, Lauderhill, FL 33313, between January 13, 2022, and August 27, 2022, and/or among other

times.

98. Plaintiff bought the Product at or exceeding the above-referenced price.

99. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

100. Plaintiff paid more for the Product than she would have paid had she known that "100% Natural Flavors" and "Naturally Flavored" was false and misleading, as she would not have bought it or would have paid less.

101. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance its representations are consistent with its composition.

102. Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar sodas represented as made with only natural flavors, because she is unsure whether those representations are truthful.

Class Allegations

103. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Florida Class:** All persons in the State of Florida who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Alabama, New Mexico, Mississippi, Utah, Nebraska, South Carolina, Tennessee, and Virginia who purchased the Product during the statutes of limitations for each cause of action alleged.

104. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

105. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

106. Plaintiff is an adequate representative because her interests do not conflict with other members.

107. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

108. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

109. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

110. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Florida Deceptive and Unfair Trade Practices Act,
Fla. Stat. § 501.201, *et seq.*</u>

111. Plaintiff incorporates by reference all preceding paragraphs.

112. Plaintiff relied on the representations and omissions to believe the Product contained only natural flavoring, which was false and misleading.

113. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>

<u>(Consumer Fraud Multi-State Class)</u>

114. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

115. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

116. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

117. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it contained only natural flavoring.

118. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

119. Defendant knew the product attributes that potential customers like Plaintiff were seeking, such as beverages with only natural flavorings, and developed its marketing and labeling to directly meet those needs and desires.

120. The representations were conveyed in writing and promised the Product would be defect-free, and Plaintiff understood this meant that it contained only natural flavoring.

121. Defendant affirmed and promised that the Product contained only natural flavoring.

122. Defendant described the Product so Plaintiff and consumers believed it contained only natural flavoring, which became part of the basis of the bargain that it would conform to its affirmations and promises.

123. Defendant had a duty to disclose and/or provide non-deceptive descriptions and

marketing of the Product.

124. This duty is based on Defendant's outsized role in the market for this type of product, custodian of the Fanta brand, the preeminent seller of natural fruit-flavored sodas.

125. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

126. Plaintiff provides or will provide notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties associated with the Product.

127. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

128. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

129. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it contained only natural flavoring.

130. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it contained only natural flavoring, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

Negligent Misrepresentation

131. Defendant had a duty to truthfully represent the Product, which it breached.

132. This duty is based on its position, holding itself out as having special knowledge and

experience this area, custodian of the Fanta brand, the preeminent seller of fruit-flavored sodas.

133.   The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant, a globally recognized and iconic brand.

134.   Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

## Fraud

135.   Defendant misrepresented that the Product contained only natural flavoring.

136.   The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

## Unjust Enrichment

137.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;
3. Awarding monetary, statutory, and/or punitive damages pursuant to applicable laws;
4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and

experts; and

5. Other and further relief as the Court deems just and proper.

Dated:   September 1, 2022

                                                      Respectfully submitted,

                                                      /s/Will Wright
The Wright Law Office, P.A.
515 N Flagler Dr Ste P-300
West Palm Beach FL 33401
(561) 514-0904
willwright@wrightlawoffice.com

Sheehan & Associates, P.C.
Spencer Sheehan*
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*Pro Hac Vice* Application Forthcoming

19